**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| YURY GRENADYOR,<br><br>    Plaintiff,<br><br>v.<br><br>SN SERVICING CORPORATION,<br><br>    Defendant. | Case No. 1:21-cv-02980<br><br>Honorable John F. Kness<br><br>Honorable Young B. Kim<br>Magistrate Judge |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

    **NOW COMES** Plaintiff, YURY GRENADYOR, through undersigned counsel, in response to Defendant, SN SERVICING CORPORATION's Motion to Dismiss, states as follows:

**BACKGROUND**

    On February 22, 2008, Plaintiff executed a mortgage in favor of Open Mortgage, LLC (the "Mortgage"). See First Amended Complaint, Dkt. #10 at ¶ 16. The Mortgage secured the purchase of Plaintiff's personal residence located at 9009 Golf Road, Unit 5H, Des Plaines, Illinois 60016 (the "Property"). *Id*. at ¶ 17. The Mortgage secured the repayment of the indebtedness evidenced by a promissory note (the "Note") in the amount of $154,000.00 (the "Loan"). *Id*. at ¶ 18. On September 1, 2017, Plaintiff defaulted on the Note by failing to make monthly payments. *Id*. at ¶ 22. On January 7, 2019, the servicing of the Loan was assigned, sold, or transferred from Seterus, Inc. to Defendant. *Id*. at ¶ 25.

Defendant mailed Plaintiff a Subsequent Interest Rate Adjustment Notice, dated January 17, 2019, providing, in part:

**Changes to Your Mortgage Interest Rate and Payments on March 1, 2019**

Under the terms of your Adjustable-Rate Mortgage (ARM), you had a one-year period during which your interest rate stayed the same. That period ends on March 1, 2019, so on that date your interest rate and mortgage payment change. After that, your interest rate may change annually for the rest of your loan term.

|  | **Current** Rate and Monthly Payment | **New** Rate and Monthly Payment |
|---|---|---|
| Interest Rate | 4.375% | 5.250% |
| **Total Monthly Payment** | $876.12 | $933.57 (due April 1, 2019 |

*Id*. at ¶ 26. On March 6, 2019, Defendant mailed an Account Statement to Plaintiff—indicating that a $1,020.96 monthly payment was due April 1, 2019. *Id*. at ¶¶ 28-29. Every month thereafter until February 5, 2020, Defendant mailed Account Statements to Plaintiff—indicating that a $1,020.96 monthly payment was due. *Id*. at ¶¶ 28-58. **Seven times**, Plaintiff sent letters to Defendant—seeking clarification or explanation for the discrepancy between the two monthly payment amounts. *Id*. at ¶¶ 98-163. **Seven times**, Plaintiff's questions and concerns went unaddressed or were otherwise inadequately or improperly responded to. *Id*.

Plaintiff sued Defendant for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.[1]; for violating the Real Estate Settlement Procedures Act ("RESPA"), 12

---

[1] The Seventh Circuit recently issued a series of decisions addressing the issue of standing in the context of the FDCPA. *See, e.g., Larkin v. Fin. Sys. of Green Bay, Inc*., 982 F.3d 1060 (7th Cir. 2020) (no standing where plaintiffs did not allege any harm or appreciable risk of harm from receipt of dunning letters); *Brunett v. Convergent Outsourcing, Inc*., 982 F.3d 1067 (7th Cir. 2020) (no standing where plaintiff did not allege injury from statement in dunning letter about reporting release of indebtedness to the IRS); *Spuhler v. State Collection Serv., Inc*., 983 F.3d 282 (7th Cir. 2020) (plaintiffs failed to set forth evidence of specific facts demonstrating concrete injury due to omission of statement in dunning letter about accruing interest); *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) (case remanded for dismissal on standing grounds where plaintiff did not allege that collection letter's

U.S.C. § 2601 *et seq.*; and for violating the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") 815 ILCS 505/1 *et seq.* Defendant moves to dismiss the complaint. For the reasons explained below, the Court should deny Defendant's motion to dismiss.

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the court will accept all well-pleaded factual allegations as true and view them in the light most favorable to the non-moving party. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). On the other hand, "[t]he complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

## ARGUMENT

**I.      RESPA applies to Plaintiff's communications with Defendant.**

"The Real Estate Settlement Procedures Act … is a consumer protection statute that regulates the activities of mortgage lenders, brokers, servicers, and other businesses that provide services for residential real estate transactions." *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1053 (7th Cir. 2018). One of its purposes is to provide consumers with timely information about real estate settlement processes. 12 U.S.C. § 2601. The Consumer Financial Protection Bureau is

---

overstatement of debt amount harmed plaintiff or created an appreciable risk of harm). In light of these cases, Plaintiff is unlikely to be able to satisfy Article III's standing requirement in order to avail himself of federal jurisdiction; therefore, stipulated to dismiss Count I—alleging FDCPA violations on October 28, 2021. *See* Dkt. #17.

charged with interpreting RESPA and prescribing rules and regulations to achieve its purposes. 12 U.S.C. § 2617(a).  As implemented by Regulation X, RESPA "allows borrowers to notify mortgage servicers of possible account errors."  *Boler v. Bank of Am., N.A.*, 2017 U.S. Dist. LEXIS 210868, 2017 WL 6555343. *10 (citing *Nunez v. JPMorgan Chase Bank, N.A.*, 648 F. App'x 905, 907 (11th Cir. 2016) (citing 12 C.F.R. § 1024.35) Regulation X is one such implementing regulation that imposes certain requirements on loan servicers with respect to loss mitigation applications.  *See* 12 C.F.R. § 1024.1.

Under Regulation X, a "servicer" must respond to a "notice of error" or "request for information" in a certain way and within a certain time frame.  *See* 12 C.F.R. §§ 1024.35(e) and 1024.36(d).  Defendant argues that it was not required to respond because: (1) it was not a "servicer;" (2) Plaintiff's letters did not assert errors; and (3) Plaintiff's letters did not request information.

### A. Defendant is a "servicer."

As defined under RESPA, "[t]he term 'servicer' means the person responsible for servicing of a loan."  12 U.S.C. § 2605(i)(2).  "Servicing," in turn, "means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan … and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3); see also 12 C.F.R. § 1024.2(b).  Defendant argues that Plaintiff's notices of error and requests for information were sent after he defaulted on the loan, and once he was in default, Defendant was no longer receiving scheduled payments from him.  So, the argument goes, the loan was no longer being serviced, and Defendant was not a servicer obligated to respond to notices of error or requests for information.

Defendant's leading authority for the proposition that it was not a servicer once Plaintiff was in default is *Daw v. Peoples Bank & Tr. Co.*, 5 Fed. App'x 504, 505 (7th Cir. 2001). In *Daw*, the plaintiff claimed she did not receive RESPA-mandated advanced notice before the servicing rights to her loan were assigned to someone else. *Id*. The court held that she was not entitled to notice, because "[o]nce Daw defaulted, there were no longer any scheduled periodic payments to make or to collect, and thus there were no servicing rights to assign, sell, or transfer." *Id*. Defendant argues that this interpretation of the statutory definitions means that once Plaintiff defaulted, there were no scheduled payments to collect, so no servicing of the loan, and, Defendant argues, no servicer. As an unpublished Seventh Circuit decision issued before 2007, *Daw* is not binding precedent. *See* Seventh Cir. R. 32.1. Anyway, *Daw* does not support Defendant's argument.

The *Daw* court did not find that the assignor of rights was not a servicer—it found that there was no assignment of the servicing of the loan. *See Daw*, 5 Fed.App'x at 505. In other words, it was interpreting the definition of "servicing," not "servicer." A "servicer" is not a person who services a loan but "the person *responsible for* servicing a loan." 12 U.S.C. § 2605(i)(2) (emphasis added). *Daw* points out that after default a loan is no longer being serviced, but that does not mean that there is no longer a person responsible for receiving and applying payments made under the loan agreement—for servicing the loan. Defendant is plausibly alleged to have been the servicer of Plaintiff's loan even after default because it remained responsible for servicing it, even if there was no active servicing. *See Buyea v. Select Portfolio Servicing, Inc.*, 2016 U.S. Dist. LEXIS 140571, 2016 WL 5904502, at *3 (S.D. Fla. 2016) ("Whether or not Defendant was actively servicing the loan, Defendant remained responsible for servicing the loan at the time it received Plaintiff's RFI.") . If Defendant were right that one cannot be the servicer of a loan after

5

default, there would be little point in the regulation's protections. A servicer could violate many of Regulation X's prohibitions willy-nilly and yet always count on the get-out-of-jail-free card that the borrower fell behind in the first place.

Plaintiff acknowledges that some cases, *Jones v. Wells Fargo Home Mortg., Inc.*, 2014 U.S. Dist. LEXIS 110838, 2014 WL 3974261 (N.D. Ill. 2014), have held differently. There, the court found that a borrower's default meant the servicer was no longer bound by RESPA requirements to furnish the borrower information. But *Jones* is not compatible with a reasonable reading of the CFPB regulations and their concomitant right to sue, which would have no point if every borrower who falls behind is precluded from recovering. And other courts have found differently. *See Paz v. Seterus, Inc.*, 2015 U.S. Dist. LEXIS 94693, 2015 WL 4389521, at *4 (S.D. Fla. 2015) (finding plaintiff stated claim for damages under RESPA even though she had admitted defaulted on her mortgage loan).

In the instant case, Plaintiff was in default at the time he delivered his notices of error and requests for information to Defendant, and had been for over a year. Defendant therefore was not "servicing" his loan. However, the fact that Defendant was not servicing the loan does not mean that Defendant was no longer a servicer. As defined under RESPA, "[t]he term 'servicer' means the person *responsible for* servicing of a loan. 12 U.S.C. § 2605(i)(2) (emphasis added). Whether or not Defendant was actively servicing the loan, Defendant remained responsible for servicing the loan at the time it received Plaintiff's notices of error and requests for information. Defendant was therefore a servicer and was obligated to respond to Plaintiff's notices of error and requests for information.

6

### B. Plaintiff's letters asserted errors.

Plaintiff alleges that Defendant violated 12 C.F.R. § 1024.35(e) by failing to properly respond to his notices of error. "Section 1024.35 of Regulation X 'allows borrowers to notify mortgage servicers of possible account errors.'" *Tanasi v. CitiMortgage, Inc*., 257 F. Supp. 3d 232, 251 (D. Conn. 2017) (quoting 12 C.F.R. § 1024.35). "This section requires servicers to respond to "any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.'" *Id*. (quoting 12 C.F.R. § 1024.35(a)).

"[T]he regulation only applies to the 'covered errors' listed in § 1024.35(b)." *Id*. (quoting 12 C.F.R. § 1024.35(b)). Moreover, "[s]ection 1024.35(b) contains a 'catch all provision,' which applies to 'any other error relating to the *servicing* of a borrower's mortgage loan.'" *Id*. (quoting 12 C.F.R. § 1024.35(b)(11) (emphasis added). "Upon receipt of a notice of a covered error, a servicer must investigate the borrower's assertions and provide a response within the specified time, which depends upon the nature of the alleged error." *Nash v. PNC Bank, N.A*., 2017 U.S. Dist. LEXIS 60697, 2017 WL 142317, at *6 (D. Md. 2017) (citing 12 C.F.R. § 1024.35(e)).

Here, Plaintiff's letters repeatedly raised concerns as to why the April 3, 2019 through March 4, 2020 Account Statements indicated Plaintiff's monthly payment amount to be $1,020.96 as opposed to $933.57, per the "Subsequent Interest Rate Adjustment Notice," dated January 17, 2019. Defendant baldly argues that they properly responded to Plaintiff's letters by:

> (1) Stating the Loan is due for its September 1, 2017 payment with principal balance of $127,576.29; (2) explaining that the April 3, 2019 mortgage statements shows an adjustment to the Loan's account for a "prior servicer charge"; (3) explaining that the subsequent mortgage statements "reflect the amount that was verified"; and (4) providing a payoff statement that explained the Loan's outstanding balance in detail."

If a loan servicer receives a valid qualified written request, RESPA requires it to take the following actions: (A) "make appropriate corrections in the account of the borrower"; (B) after investigating the account, "provide the borrower with a written explanation or clarification" explaining why the account is correct; or (C) "provide the borrower with … [the] information requested by the borrower" or explain why it is "unavailable." 12 U.S.C. § 2605(e)(2)(A), (B), and (C); *see also Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2017) The statute also requires the servicer to provide the contact information of an employee who can provide further assistance. § 2605(e)(2)(C).

Plaintiff's letters presented, *inter alia*, concerns regarding variations in monthly amounts due between the Account Statements and "Subsequent Interest Rate Adjustment Notice." This is enough to trigger Defendant's response duties under RESPA. Defendant's response, however, did not make appropriate corrections; did not explain or clarify why the amounts were correct; and did not provide contact information of an employee who can provide further assistance. Instead, ***seven times***, Plaintiff's concerns went unaddressed or were otherwise inadequately or improperly responded to. In other words, Defendant failed to satisfy its duties under RESPA. Accordingly, the Court should deny Defendant's motion to dismiss Plaintiff's 12 C.F.R. § 1024.35(e) claims.

### C.     Plaintiff's letters requested information.

Plaintiff alleges that Defendant violated 12 C.F.R. § 1024.36(d) by failing to properly respond to his requests for information. Section 1024.36 of Regulation X requires servicers to respond to a borrower's requests for information by either: (i) providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or (ii) conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that

8

the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance. 12 C.F.R. § 1024.336(d)(1). The regulations provide, relative to Plaintiff's requests here, a thirty day response time. *Id*. § 1024.36(d)(2)(i)(B).

Defendant argues that the letters in question were not requests for information, and contends that Plaintiff's letters merely seek to dispute or validate Plaintiff's debt; therefore, do not trigger the obligations under RESPA. By Defendant's argument, a servicer would have no obligation to respond to a borrower who expressed their belief that their account was in error, and sought information related to that belief, an untenable result under the language of the statute.

RESPA, however, does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. The language of the provision is broad and clear. To be a qualified written request, a written correspondence must reasonably identify the borrower and account and must "include a statement of the reasons for the belief of the borrower, *to the extent applicable*, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (emphasis added). Any reasonably stated written request for account information can be a qualified written request. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond. *See* 12 U.S.C. §§ 2605(e)(1)(A), (e)(2), and (e)(3); *see also Garcia v. Wachovia Mortgage Corp*., 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (when construed in light most favorable to borrower, letter was a qualified written request even though it did not contain a statement of reasons for borrower's belief of errors; letter

9

provided sufficient detail regarding "other information" being sought); *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F. Supp. 2d 1156, 1162 (M.D. Ala. 1999) (plaintiffs' claims survived summary judgment where court found that descriptions of payments made to a prior servicer sufficiently stated plaintiffs' reasons for their belief that their account was in error and were qualified written requests).

Plaintiff's letters included content that was clearly sufficient to be a qualified written request. Each letter described in great detail Plaintiff's questions and concerns. Each letter provided a thorough statement of the reasons for the belief of Plaintiff that the account is in error under 12 U.S.C. § 2605(e)(1)(B). Each letter then continued, requesting very specific information as to fees, charges, and interest charged to Plaintiff's mortgage loan as well as clarification or explanation as to variations in monthly amounts due between the Account Statements and "Subsequent Interest Rate Adjustment Notice." Some of this information might have been "unavailable or [unable] to be obtained by the servicer" under 12 U.S.C. § 2605(e)(2)(C), but whether the information Plaintiff sought was unavailable or whether his questions were unanswerable does not negate the fact that he had provided sufficient detail to Defendant regarding other information sought by him under 12 U.S.C. § 2605(e)(1)(B). Each of Plaintiff's letters were qualified written requests; and therefore, Defendant was obligated to respond. Accordingly, the Court should deny Defendant's motion to dismiss Plaintiff's 12 C.F.R. § 1024.36(d) claims.

**II.     Defendant engaged in unfair practices.**

Defendant next argues that it is entitled to dismissal of Plaintiff's claim under the Illinois Consumer Fraud Act. "The elements of a claim under the ICFA are: '(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during the course of conduct

10

involving trade or commerce.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010)). In addition, a plaintiff "must show 'actual damage' in order to maintain an action under the ICFA." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2020). "The actual damage element of a private ICFA action requires that the plaintiff suffer 'actual pecuniary loss.'" *Id*. (quoting *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 888 N.E.2d 1190, 1197, 321 Ill. Dec. 257 (Ill. App. Ct. 2008)). Plaintiff may assert claim under ICFA based on either deceptive conduct or unfair conduct (or both). *See, e.g., Camasta v. Omaha Steaks Int'l, Inc.*, 2013 U.S. Dist. LEXIS 118475, 2013 WL 4495661, at *8 (N.D. Ill. 2013) ("Recovery may be obtained for unfair *and* deceptive conduct, and thus *Camasta* may proceed under either theory.") (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 775 N.E.2d 951, 960, 266 Ill. Dec. 879 (Ill. 2002)). Here, Plaintiff asserts claims under ICFA based on unfair practices.

"To show that something is an 'unfair practice' under the CFA, the practice must offend public policy; be immoral, unethical, oppressive, or unscrupulous; or cause substantial injury to consumers." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 665 (7th Cir. 2008) (quoting *Robinson*, 775 N.E.2d at 961). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id*. (citing *Robinson*, 775 N.E.2d at 961).

First, Defendant's conduct offended public policy. A practice offends public policy under ICFA where it "violates statutory or administrative rules establishing a certain standard of conduct." *Saika v. Ocwen Loan Servicing, LLC*, 357 F. Supp. 3d 704, 2018 U.S. Dist. LEXIS 206795, 2018 WL 6433853, at *8 (N.D. Ill. 2018). Here, Plaintiff maintains that Defendant's practice of violating RESPA by itself is unfair, because RESPA violations establish unfair

practices under the ICFA. *See Saccameno v. Ocwen Loan Servicing, LLC*, 372 F. Supp. 3d 609, 2019 U.S. Dist. LEXIS 36245, 2019 WL 1098930, at *9 (N.D. Ill. 2019).

Second, Defendant's conduct was "immoral, unethical, oppressive, or unscrupulous." For purposes of ICFA, "a practice may be considered immoral, unethical, oppressive, or unscrupulous if it imposes a lack of meaningful choice or an unreasonable burden on the consumer." *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc*., 633 F. Supp. 2d 610, 616 (N.D. Ill. 2009). Here, Defendant's conduct left Plaintiff with a lack of meaningful choice. After all, Plaintiff had no choice in selecting Defendant as his loan servicer and he had no ability to get rid of Defendant after it began mishandling his account. Nor, in any case, can there be any doubt that Defendant's conduct placed an "unreasonable burden" on Plaintiff for 16 months he experienced an ongoing pattern of inaccuracies, misinformation, and anxiety because of Defendant's failure to fix errors that, to all appearances, could have been fixed in a matter of hours, if not minutes.

Finally, Defendant's conduct results in substantial injury to consumers. "A practice causes substantial injury to consumers if it causes significant harm to the plaintiff and has the potential to cause injury to a large number of consumers." *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc*., 633 F. Supp. 2d 610, 617 (N.D. Ill. 2009). It is abundantly clear that Defendant's conduct caused Plaintiff significant harm, particularly in the form of emotional distress. However, Defendant's conduct had the potential to injure a large number of other consumers. The fact that Defendant's procedures were unable to correct the errors it had made in servicing Plaintiff's loan lend credence to reasonably conclude that the procedures themselves were defective. This is especially so given that the errors were fairly simple and straightforward, and the fact that the procedures failed not just once but repeatedly. To the extent that Defendant's loan servicing practices are themselves defective, they carry the *potential* to result in similar harm to other

consumers. Given the sheer size of Defendant's loan portfolio, it is reasonable to conclude that the potential harm extends to a large number of consumers. *Cf.* S*tephens v. Capital One, N.A.*, 2016 U.S. Dist. LEXIS 120450, 2016 WL 4697986, at *6 (N.D. Ill. 2016) ("Defendant's expansive consumer base similarly allows the Court to reasonably infer that a large consumer base may be at risk for similar conduct that has been alleged to qualify as 'unfair' under the ICFA."); *Wilson v. Harris, N.A.*, 2007 U.S. Dist. LEXIS 65345, 2007 WL 2608521, at *8 (N.D. Ill. 2007) ("Given that Harris Bank is alleged to have more than two hundred branches in the Chicagoland area and northwest Indiana, the court can reasonably infer that its large consumer base may be at risk of being subjected to cursory and inadequate investigations of claims of unauthorized transactions.").

Finally, Defendant argues that Plaintiff's ICFA claim fails because he has not—and cannot—allege actual damage. Plaintiff, however, claims he suffered economic damages— including, attorneys' fees incurred to review Defendant's shoddy accounting history, postage incurred in sending NOE #1 through NOE #7, and the time expended in preparing NOE #1 through NOE #7. Plaintiff further alleges he suffered emotional distress—resulting in anxiety, depression, embarrassment, sleepless nights, and other significant manifestations of emotional distress. These manifestations, coupled with Plaintiff's claims for postage and time spent related to his efforts to resolve his issues with Defendant, suffice to allege actual damages at this stage. *See Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992, 1005 (N.D. Ill. 2016) (finding on summary judgment that having to pay out-of-pocket costs for medications as a result of defendant's conduct, in addition to suffering from aggravation and stress that caused migraines, chest pains, and sleepless nights, among other problems, sufficiently demonstrated substantial injury); *People ex rel. Hartigan v. Stianos*, 475 N.E.2d 1024, 1029, 131 Ill. App. 3d 575, 86 Ill. Dec. 645 (1985) ("While the three sales upon which this case is premised reflect only a few cents in overcharges,

13

it is apparent that similar overcharges, if permitted to continue, could aggregate very substantial losses and injury to the consuming public.").

Thus, there is sufficient evidence under each of the criteria singled out above to support Plaintiff's ICFA unfairness claim; and to the extent that the evidence is insufficient as to any of the criteria individually, the evidence is sufficient when viewed collectively. Hence, Plaintiff's ICFA claim is adequately pled, and the Court should deny Defendant's motion to dismiss as to Plaintiff's ICFA claim.

## CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss should be denied.

DATED: October 28, 2021

Respectfully submitted,

**YURY GRENADYOR**

By: */s/ Joseph S. Davidson*

Joseph S. Davidson
LAW OFFICES OF JOSEPH P. DOYLE LLC
105 South Roselle Road
Suite 203
Schaumburg, Illinois 60193
+1 847-985-1100
jdavidson@fightbills.com

14

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 28, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                            */s/ Joseph S. Davidson*